Good morning, and may it please the Court, my name is Ramek Stahl, and my co-counsel, Laura Lively, and I represent the plaintiff, Manuel Lozano, under the supervision of Dean Erwin Chemerinsky. I'll first address the substantive issues in this case, and my co-counsel will then address the procedural issues. And with that said, I'd like to reserve two minutes of our time for rebuttal. Thank you. The central issue in this case is whether the lower court erred in granting summary judgment as to causation. Mr. Lozano contends that he went blind in his left eye and suffered a blur film in his vision following the defendant's deliberate indifference to his glaucoma, whereas the defendants contend that it was caused by his diabetes. However, as a preliminary matter, the cause of Mr. Lozano's blindness is an inherently factual question that needs to be resolved by a jury. So what evidence did your client submit that it was caused by glaucoma and not diabetes? Well, Your Honor, I'd like to point to two particular pieces of evidence. The first of which is that Mr. Lozano's treating ophthalmologist, Dr. Teasley's treatment plan for his glaucoma, was to have him report for glaucoma appointments every two to three weeks, typically, but never more than every six weeks. However, beginning in December of 2011, the defendants delayed his glaucoma appointments for a full six months. And in the first appointment with Dr. Teasley, following this unprecedented six-month delay, she diagnosed him as being legally blind in his left eye and made a notation on the same document that said, again, my plan was not followed at all. Did she offer an opinion that, in fact, the blindness was caused by glaucoma rather than diabetes? She did not offer an opinion, no, Your Honor. However, my co-counsel will address that issue. And this is particularly probative at the summary judgment stage in light of emergency room discharge paperwork that a physician provided to the defendants following one of his visits, which stated that glaucoma can cause permanent loss of vision if not treated properly and emphasized that proper treatment includes regular follow-up care with an ophthalmologist, which he wasn't receiving. The second piece of evidence I'd like to address is that on two consecutive occasions and in direct conflict with his ophthalmologist's explicit orders, the defendants deprived Mr. Lozano of a necessary post-operative antibiotic, Vigamox, following his Aviston treatments. Now, after the first instance in October of 2012, Mr. Lozano wrote a letter and filed a grievance with Defendant Knudson and explained that he began to see a blur film in his vision as a result of not receiving this Vigamox. The deprivation of Vigamox on its own, because it's a denial and not a delay, is on its own a sufficient basis to warrant reversal. He submitted something saying, as a result. Is he in a position to testify that that was the causation? No, Your Honor. It's merely the – we're not using Mr. Lozano's statement to, in fact, show causation, but rather the very tight temporal proximity between when he was deprived of Vigamox and when he subsequently developed this blur film in his vision. That is sufficient to withstand summary judgment. And this is particularly true in light of the fact that the same discharge paperwork that I previously mentioned from the ER also explicitly stated that medications for glaucoma need to be taken exactly as directed, which wasn't happening. Well, most of the paperwork I get from doctors' offices this day explain that I'm going to die unless I do exactly what I'm told. I mean, that's just kind of the nature of discharge paperwork, isn't it? I mean, that's not somebody testifying that, in fact, there was that kind of causative link in this case. No, Your Honor. It just merely provides context and notice to the defendants, if somehow they weren't on notice by that point, that the precise harm that Mr. Lozano was alleging was happening to him based on three health care request forms and two grievances during the delay and then also the grievance as to his Vigamox issue shows that the defendants were on notice as to exactly what type of harm could occur. And I would note that the Macy Declaration does not even address the issue of Vigamox. So opposing counsel will argue extensively about the Macy Declaration. However, he says the vision loss is not due to a coma or treatment for glaucoma, which may be addressing it indirectly. His vision loss is directly tied to diabetes and effects of that disease. So far, I haven't seen a whole lot in the record that counters that testimony. Well, Your Honor, as I noted, the six-month delay as well as the Vigamox, which, again, the deprival is in and of itself enough to withstand summary judgment. Well, the problem is that he couldn't get a declaration, isn't it? I mean, isn't that part of your case, that he kept asking how to produce a declaration that would counter Dr. Macy's opinion? Yes, Your Honor, and my co-counsel will go in. That might be the purposeful way to segue to your co-counsel. Yes. So while we hold that question, stop the clock. You know the question. Go ahead. Switch. All right. All right, you just got the question. Yes, Your Honor. Well, good morning, Your Honor. May it please the Court. My name is Laura Lively, also co-counsel for Mr. Lozano. As to your question, in granting summary judgment for defendants, the magistrate judge did rely heavily on two procedural failings by Mr. Lozano. The first was his failure to actually attach his medical records to his opposition, but the second was his lack of declarations from treating ophthalmologists. However, Mr. Lozano was extremely diligent in his efforts to comply with both of these procedural requirements. However, the lower court failed to provide him any assistance in his efforts to comply with procedural requirements, which violates the name. Gave him a lot of time. Yes, Your Honor. Like a year and a half, all told. Yes, but extensions and time was not what Mr. Lozano needed. What Mr. Lozano needed was an answer to his simple question of how to obtain declarations. You actually asked that question, how do I get a declaration from my doctor, didn't you? So one possibility is that the lower court could have told Mr. Lozano that he could depose Dr. Teasley, because it was clear that Mr. Lozano was trying to subpoena statements, which is the improper tool for obtaining statements from physicians. But the lower court should have also just indicated to Mr. Lozano that the evidence that he had lodged into the record at docket number 34, which is ER 1408, and which the lower court lodged into the court record at docket number 35, which is ER 1161, she wasn't reviewing that on summary judgment. And this evidence should have been reviewed on summary judgment, because it could have been presented in an admissible form at trial. And at the summary judgment stage, courts do not focus on the admissibility of the evidence's form, but rather on the admissibility of the contents of the evidence. Moreover, the procedural failings on the part of a pro se prisoner, when combined with the voluminous medical records that Mr. Lozano did lodge into the court record, illustrate how his case presented exceptional circumstances. It was both complex and likely to succeed on the merits, and therefore Mr. Lozano should have been appointed counsel. Courts determine complexity by looking at two things, the nature of the claim itself, but also the individual characteristics of the plaintiff. Mr. Lozano's claim is complex because this court has specifically indicated that deliberate indifference claims are by nature complex, where they turn on complex medical questions of competing treatment regimens and causation. And that is precisely the case here. But it's also clear that the lower court abused its discretion in light of the unique characteristics of Mr. Lozano, a pro se incarcerated litigant with no legal training, a 10th grade education, no high school diploma or GED, especially in light of this court's finding in Solis v. Los Angeles, where this court deemed a similarly incarcerated plaintiff with no legal training and an 8th grade education as ill suited to defend his claim and likely met the standard for appointment of counsel. But I'd also like to bring the court's attention to just some of the language from any one of Mr. Lozano's repeated requests for counsel. On one occasion he says, I have an extremely low school level, my worst being reading comprehension. I respectfully request my request to a pro bono be allowed, granted. And on another occasion, I cannot reply as I do not know what exact meaning is within such referred references, case law. He started that series of requests right at the beginning, didn't he? He certainly did, Your Honor. He continued them all the way through post-judgment, right? Yes, he did, Your Honor. Do you have any information as to how many such requests the central district receives? Do I have any information? No, I don't, Your Honor. Do you have any idea about how many pro bono lawyers are lined up to take these kinds of cases? No, but I do know, Your Honor, that there is a program in the district court for appointment of counsel, and there are plenty of young junior associates at law firms who would be very excited to take on a pro se case. That's how we get a lot of people. Yes, Your Honor. I'll finish up my time really quick just by pointing out that the cruel irony of this case is how, despite its merits and Mr. Lozano's undeniable diligence, he was unable to withstand summary judgment because he fell victim to procedural pitfalls that he certainly would have avoided with any assistance from the court or with appointment of counsel. We'd ask this court to reverse and remand and appoint Mr. Lozano counsel. Thank you. Morning. Chris Lockwood for the defendants' appellees. The basis for the court's judgment is stated on page 3-4 of the record. Plaintiff has not rebutted Dr. Macy's declaration that Plaintiff's loss of vision is not due to glaucoma or treatment for glaucoma. Plaintiff has not rebutted Dr. Macy's declaration that the multiple injections Plaintiff received for severe diabetic rhinopathy were within the standard of care. Plaintiff has failed to create a genuine issue of material fact as to its claim against Dr. Montenegro. The opening brief doesn't once mention Dr. Macy or the basis for the court's judgment. The entire basis for this one has been waived by lack of any briefing on it. Wait a minute. That's just not true. There's no obligation from the talk about the evidence. They've certainly raised the issue. So how can you say the issue's been waived? They may not have talked about what you wanted to talk about with regard to the issue, but it's not like they haven't talked about it. They didn't talk at all about the basis for the motion was based on causation and on the ground that the cause of loss of vision was diabetes, not glaucoma. They never once mentioned that in the opening brief. Well, that was the basis of the ruling with regard to Dr. Montenegro, but was that the basis of the ruling for the other defendants? Yes. It carried over to everybody else as well. Those other rulings didn't turn on deliberate indifference? Well, that's the second part of it. But the first part is if there's no causation, nothing else matters. So causation was the basis for everything on top of other grounds. But, counsel, what do we do about those doctor's notes? Again, my plan was not followed at all. Okay. Part one is they were not submitted in the opposition, and there's a contention made in the reply for the first time that theó I cited multiple cases holding that if it's not submitted, it's part of the opposition, but it's someplace else in the record, the court has no obligation to look at it. The opposition, without stating anything, says that rule doesn't apply to pro se. Do you have any cases that say it does apply to pro se? Yes, I do. Bias v. Moyahan, it's 508F3-1212 at page 1219, 2007 case. Quote, Ms. Bias concedes she did not present any evidence to the district court to support her claims in her amended complaint. She maintains, however, that as a pro se litigant, the district court should have searched the entire record to discover whether there was any evidence that supports her claims. We disagree. A district court does not have to searchóa duty to search for evidence that would create a factual dispute. But does a district courtóit seems to me, though, and I'll need to refresh my memory on Bias, but in this case there clearly was evidence that he talked about, about how he had this doctor's note, and he was the one who said I was going to my doctor and asking for these things. It wasn't having to search a million pages to try to find the one needle in the haystack. Do you have a case where it really is a procedural fault as to why that was not technically before the court? Well, that case was one of them. I have a second case as well, also a pro per case. Before you go on, really in this case heóI understood it. You correct me if I'm wrongóthat he actually filed these papers, these reports from the doctor. It just was that it wasn't cited properly in his papers like a lawyer would do. Is that right? That's actually fairly questionable. There is a one cryptic note in one document well before we filed the motion for summary judgment which says plaintiffs lodged documents. The record on appeal or the excerpts of record include several hundred pages of documents which they contend are the ones. The way they got them, however, is plaintiffs gave some documents at a deposition. The plaintiff's counsel contacted us and we provided them. They didn't go to the court to see what the court got. We don't know if that's what the court got. That was their burden. They didn't do it. That's part one. Is there any doubt about the authenticity of the documents? Yes, there is. There is? The documents that you say you just provided you don't think are authentic? No, not authenticity as to whether they're actual medical records, actually whether the court has them, but that is. A second case on the pro per that the same rule applies is Gordon versus I can't pronounce the second name. The more you make out a case that you've got to be tough on pro se litigants, the more difficult or the higher the wall you're building on the question of whether for a case this complicated pro bono counsel should have been appointed. Well, let me go through the timeline. If you look through this long, long timeline, as you commented, the court gave him loads of time. He had a deadline. He was given indications of what to do. He got a copy of the rules. He got extension after extension after extension after extension after extension. Did he ever get an explanation on how to get a declaration? By itself, no. He did file, well, first of all, he did file a declaration himself prior to this. He knew how to do it. The motion included a declaration, two declarations actually. That gives an example on how to do it. And there is no procedure to compel somebody to prepare a declaration. There have been contentions made that he should have been allowed a deposition. Well, that would have been some explanation. I mean, saying that there is no procedure rather than telling him how to get a subpoena, which is, I think, what the answer was. Well, he got records that way. But there is no procedure. No matter what the court could have said, it wouldn't have changed the result because there is no procedure. You can ask for a deposition. Well, counsel, let me ask you about there's the Teasley note, which is the note I think to me is the most important note from their perspective, not following the language. Again, my plan was not followed at all. The incarcerated prisoner here did ask for a subpoena for that witness, correct? He did. Well, right there, he says, this is the witness I want to hear from. This is the witness that happened to have written that note that I think is the strongest piece of evidence that they have in this case. Why wouldn't that be enough for the district court to know, okay, this note must be important because this prisoner guy is asking for this doctor who wrote the note. Why wouldn't that be enough to at least put the note before the district court? Procedurally, there wasn't any reference to a particular note. He said a person. We have this, assuming the court got it at all, we have a several hundred-page stack of documents with no indication of anything in there important. It's his job, his minimal burden, to point out where to put the evidence in, at least point to records. He didn't do that. Doesn't he have to justify why he wants Dr. Teasley as a witness? Well, if he wants a deposition, he, well, to get a subpoena, for a prisoner to get a court-ordered subpoena, it's been my experience, the prisoner has to provide a justification as to why that witness, because they'll ask for Barack Obama, you know, they'll ask for anyone to come into court. Here, the subpoena was issued, which means the district court must have had some inkling that Dr. Teasley, a busy doctor, needed to be issued a subpoena by the marshal service. So what was the showing made to the district court about Dr. Teasley? Next to none. My recollection of this one, he simply said, I want a subpoena, and these are the doctors who treated me. And so if the district court thought it was appropriate to issue a subpoena for the doctor, I'm still not understanding why that wouldn't put that, what the doctor said, into play in this case. Well, let's go back again. The district court didn't have any indication from the plaintiff, despite a year and a half of time to do it, of anything the doctors could have said relevant to the case. There's been issues about a deposition and whether that could have been done. But one issue that they completely skipped is, depositions cost money. Court reporters have to be paid. The plaintiff couldn't have paid for one no matter what. That's simply a non-issue because of that. Also important, I think, to note is that during a large portion of this, the plaintiff was not in custody. He was out of custody. So he couldn't pay for it, therefore it's not an issue. Is that your position? Well, I think the contention is that the district court should have allowed a deposition to have occurred. That's part one allowing it. Part two is practicality. How do you do it? If you can't conduct a deposition, what good is an order to allow you to do so? They skipped that part completely. Does anything in the record attest to the fact that he wouldn't have been in a position to do it? Yes. I cited in a brief in which he says he couldn't even afford the very basic postage stamps. This whole thing was an informal process. He didn't have the money to do anything according to his own declarations. I want to cite the second case I was talking about, and this is on the same thing. The same rule applies to a pro per, and that's the Gordon 575 F3rd 1040 and 1058. There's also been a contention in the reply for the first time that a non-treating doctor can't give a declaration in support of a summary judgment on medical issues. They cited nothing in support of that. The case is once again to the contrary. Kennedy, 161 F3rd 1226, 1227, footnote one, and some until. It's 155 F3rd 1130 and 1134. Both Ninth Circuit cases, both of which relied on a declaration by a non-treating doctor as a basis for summary judgment. So you put all this together, and you look at the deadlines and deadlines and deadlines, always extensions. He got all the time he could have. He needed this one. He was warned twice explicitly of the need to submit evidence. Our opposition, excuse me, our reply on the motion expressly pointed out the lack of evidence. The opposing counsel says that there were exceptional circumstances because this was a complex issue and because he wasn't articulate enough to express his claim. What do you say about that? Read what he wrote. He's actually pretty articulate. Actually, I do a lot of proper cases, and he's definitely above average for articulate. He filed motions to compel in this case. He obviously wasn't articulate enough to get a declaration. Well, he did file a declaration in this case. He knew how to do it. That's not the issue. It's not because of lack of knowledge. His own declaration. Right. Well, that's a lot different than getting someone else's. But he knew how to do declarations because of that. I don't think the issue was whether he knew how to write out a declaration. It was how he would get someone else like Dr. Teasley to provide one. Wasn't that really the issue in this case? Well, one thing skipped over of all this is whether Dr. Teasley would have provided anything contrary. They assumed that would have happened. There's no offer of proof. There's nothing on that. And this whole thing, counsel could have come in. What would counsel have done differently? They skipped that question. Post-it stamps. All right, counsel, I think you're over time. Thank you very much. Thank you. In my very short time, I just want to make two points. First, I want to begin by saying that Mr. Lozano did lodge medical records into the lower court record, and the lower court acknowledged these records and lodged them at docket number 35, ER 1161. Did he do anything to point to the record that we're talking the most about now? Yeah. Dr. Teasley's note. Yes, and I believe that would be my second point, Your Honor. Mr. Lozano did allege facts and explain the narrative of his case and his claims in a pretty concrete manner. He was able to point to the six-month delay in his treatment. He was able to point to June 2012, which would have drawn the court's attention to looking for the appointment where Dr. Teasley confirmed his diagnosis as legally blind. So there were things, as this court mentioned, that the court could have specifically looked for rather than scouring through the record. But again, Your Honor, it's more that the court should have notified Mr. Lozano that in order for these medical records to be considered, they had to be attached to his deposition or, I'm sorry, to his opposition. Thank you so much. Thank you very much, counsel. This matter is submitted. Again, thanks to both sides for their argument in this case.
judges: Clifton, Owens, Antoon